E-FILED; Baltimore City Circuit Court
Docket: 7/28/2026 1:22 PM; Submission: 7/28/2026 1:22 PM
Envelope: 27547780

**IN THE CIRCUIT COURT OF MARYLAND**

**FOR BALTIMORE CITY**

MAYOR AND CITY COUNCIL OF BALTIMORE,

Plaintiff,

Case No. C-24-CV-26-005160

v.

JOPEN, LLC (d/b/a A1 WHOLESALE, EVOLUTIONARY ORGANICS, INNOVO ACTIVAS, AMERICAN KRATOM-D, and PARTY NUTS)
203 N. Prairie Ave.
Dallas, TX 75246
**Serve on:**
Registered Agents Inc.
5900 Balcones Dr., Ste. 100
Austin, TX 78731;

JURY TRIAL DEMANDED

MARTIAN SALES, INC.
30 N. Gould St., Ste. R
Sheridan, WY 82801
**Serve on:**
Registered Agents, Inc.
30 N Gould St., Ste. R
Sheridan, WY 82801;

PUR BOTANICALS LLC (d/b/a CHOICE ORGANICS)
2679 Arbor Spring Way, Ste. 214
Marietta, GA, 30066
**Serve on:**
Mark Jennings
2679 Arbor Spring Way
Marietta, GA, 30066;

JOHN DOE CORPORATIONS 1-10; and

OTHER JOHN DOE ENTITIES 1-10,

Defendants.

**COMPLAINT WITH JURY DEMAND**

## SUMMARY OF THE ACTION

1. Plaintiff Mayor and City Council of Baltimore ("Plaintiff" or the "City") brings this civil action against Defendants JOpen, LLC (d/b/a A1 Wholesale, Evolutionary Organics, Innovo Activas, American Kratom-D, and Party Nuts) ("JOpen"), Martian Sales, Inc. ("Martian Sales"), Pur Botanicals LLC (d/b/a Choice Organics) ("Pur Botanicals"), John Doe Corporations 1-10, and Other John Doe Entities 1-10 (together, "Defendants") seeking civil penalties and injunctive relief to remedy Defendants' violations of the City's Consumer Protection Ordinance, Baltimore City Code, Art. 2, § 4 ("CPO" or "Ordinance") in connection with Defendants' unlawful, unfair, and deceptive trade practices, in advertising, marketing, and selling highly addictive, dangerous kratom products, including O.P.M.S.-branded products[1] ("Kratom Products") in the City of Baltimore while (1) falsely stating or implying in their labeling, packaging, advertising, and marketing of the Kratom Products that the Kratom Products are safe for consumption or offer therapeutic and health benefits that they do not have; and (2) failing to disclose the active ingredients in their Kratom Products are highly addictive substances similar to opioids.

## I. INTRODUCTION

2. Kratom is derived from the leaves of a tropical plant, *mitragyna speciosa*, native to Southeast Asia, where it has been used in herbal medicine since the 19th Century. Kratom contains psychoactive alkaloids that bind to the opioid receptors in the human brain. "Alkaloids" are a class of various naturally occurring organic chemical compounds. The primary alkaloids in kratom leaves responsible for kratom's effects are mitragynine ("MG") and 7-Hydroxymitragynine ("7-OH"). Depending on the dosage and conditions of use, these alkaloids produce dose-dependent

[1] O.P.M.S. stands for "Optimized Plant Mediated Solutions."

effects, ranging from increased stimulation to classic opioid related sedative, analgesic, and adverse effects.[2]

3. Through July 1, 2026, Defendants' Kratom Products were widely sold within the City at retail locations including gas stations, convenience stores, corner stores, and smoke/vape shops and available for purchase through online retailers, such as through JOpen alias "PartyNuts.com," who shipped the Kratom Products, in capsule, loose powder, and liquid extract forms.

4. As described in detail herein, Defendants consistently market their Kratom Products as "safe" and an innocuous "botanical" product, advertise that they are "constantly working to . . . ensure only safe . . . products reach consumers," and markets them as an innocuous alternative to controlled substances, like cannabis and prescription opioids. In addition, Defendants consistently market their Kratom Products to be used "whenever you need a boost of energy or pain relief" and as providing therapeutic and wellness benefits, such as providing: "pain relief," "mood enhancement," "focus," "boosts focus & productivity," and "natural relief from stress, discomfort, and fatigue, all while enhancing mood and relaxation."

5. While making these myriad representations as to the safety and therapeutic benefits of their Kratom Products, Defendants fail to disclose that kratom's psychoactive compounds operate on the same brain receptors as opioids and carry the same risks of dependency.

6. Instead, Defendants tout the safety of their Kratom Products telling consumers that while counterfeiters "have been known to add dangerous ingredients to their mix," Defendants' Kratom Products are "safe" by comparison.

---

[2] *FDA and Kratom*, U.S. Food & Drug Admin. (Dec. 2, 2025), https://www.fda.gov/news-events/public-health-focuse/fda-and-kratom.

7. Despite Defendants' promises of safety and assurances that user safety is a top priority, the Kratom Products are anything but. They are highly addictive, act similar to opioids, and have been suspected to have caused or contributed to overdoses, including overdose deaths.

8. Reasonable consumers do not know, and, despite their promises of safety, Defendants fail to disclose, that the active ingredients in Defendants' Kratom Products work on the same opioid receptors in the human brain as opioids, have similar effects, and thus, have the same risk of physical addiction, dependency, and withdrawal symptoms.

9. Moreover, reasonable consumers reviewing the labeling, packaging, advertising, and marketing statements related to Kratom Products would not expect that the Kratom Products purchased at gas stations and corner stores are capable of causing an overdose, function like an opioid, and have highly addictive characteristics.

10. Defendants intend for consumers to rely upon the statements on the Kratom Products' labels or packaging, the statements on their www.OPMSKratom.com website, the statements on any other websites on which their Kratom Products are advertised, marketed, and sold.

11. Defendants have employed a web of shell companies and alter egos, and use multiple business names, assumed names, and trade names to hide the scope of their operation and to avoid liability for their actions. Defendants operate collectively to design, label, package, market, advertise, and sell Kratom Products throughout the United States, in the State of Maryland, and in the City.

12. As described herein, Defendants share principals and membership, physical and mailing addresses, legal counsel, and organizers and/or incorporators. In addition, they commingle their funds and other assets, fail to segregate funds between them, treat each other's assets as their

own, fail to maintain separate corporate records, share the same employees, and, as to Martian Sales and Pur Botanicals, undercapitalize, such that they are alter egos of each other.

13. The City asserts claims against Defendants for their unfair and deceptive trade practices in marketing, advertising, and selling their highly addictive, dangerous Kratom Products in the City while: (a) falsely stating or implying through their labeling, advertising and marketing that their Kratom Products are safe or have therapeutic benefits that they do not have; and (b) simultaneously failing to disclose that their Kratom Products are highly addictive substances.

14. Each Defendant, individually and collectively, knew, or at a minimum, should have known that its representations as to their Kratom Products were false and misleading, that their Kratom Products are highly addictive and deleterious to health, and that due to those characteristics, do not provide the promised therapeutic benefits, and thus, their marketing and promotion of their Kratom Products, as described herein, was highly deceptive and misleading.

15. As a result of the violations asserted herein, the City seeks civil penalties and injunctive relief under the City's Ordinance.

16. The City brings this action exclusively under the City's Ordinance. No federal claims are being asserted. No issue of federal Constitutional, statutory, or regulatory law is raised herein—not directly, indirectly, or by implication. All issues raised herein relate to the City of Baltimore and the City's Ordinance; therefore, this case does not have national systemic importance or impact, and no issue raised in this case affects the federal system as a whole. To the extent that any claim or factual assertion set forth herein may be construed to have stated any claim under federal law, such federal claim is expressly and undeniably disavowed and disclaimed by the City.

17. No Defendant is registered or qualified to conduct business in the State of Maryland, but, as described herein, Defendants regularly conducted business within the Maryland through their advertisement, sale, and distribution of Kratom Products within the State. Because they are not registered or qualified to do business within the State, they cannot avail themselves of a statute of limitation defense, pursuant to section 5-204 of Maryland's Courts and Judicial Proceedings Article.

18. The City of Baltimore does not bring this action on behalf of a class or any group of persons that can be construed as a class. The claims asserted herein are brought solely by the City, and are wholly independent of any claims that the individual users of Kratom Products may have against Defendants.

## II. PARTIES

### A. Plaintiff

19. The Mayor and City Council of Baltimore is a body corporate, duly organized and existing by virtue of the constitution and laws of the State of Maryland. The powers and duties with which the City is charged are set forth in the Charter of Baltimore City ("Charter").

20. The City brings this suit on its own behalf, pursuant to its chartered authority to provide for the preservation of the health of all persons within the City, pursuant to its police power to regulate conduct within the City, and pursuant to its authority to enforce the Ordinance to ensure the protection of Baltimore residents and consumers and the commercial marketplace.

**B. Defendants**

**1. JOPEN, LLC**

21. Defendant JOpen (d/b/a A1 Wholesale, Evolutionary Organics, Innovo Activas, American Kratom-D, and Party Nuts)[3] is a Texas-based limited liability company with its principal place of business located at 203 N. Prairie Ave., Dallas, TX 75246.

22. JOpen is involved in all aspects of the operations of the web of companies involved in the design, production, marketing, distribution, and sale of the Kratom Products.[4]

23. JOpen is the Texas-based distributor of Kratom Products for Defendants and the entity that collects, investigates, and responds to customer complaints submitted through the contact information listed on the Kratom Products' packaging and to adverse event reports.[5]

24. JOpen also collaborates with Martian Sales on the www.OPMSKratom.com website, and has commissioned market research for distributing products in international markets.[6]

25. JOpen's corporate filings list Eyal David Gabbay ("Gabbay") as its principal officer. Gabbay also acts as the owner, operator, and manager of JOpen.[7]

---

[3] Off. Sec'y of State, Corp. Div., Assumed Name Certificate for Filing with the Secretary of State, Filing 801637511, Document No. 483782730002 (June 3, 2013); Off. Sec'y of State, Corp. Div., Assumed Name Certificate for Filing with the Secretary of State, Filing 801637511, Document No. 483782730004 (May 24, 2013).

[4] *See, e.g.*, Rule 30(b)(6) Dep. Tr. JOpen, LLC (Gabbay) at 98:5-99:6, 268:5-269:9, 302-15-19, *McKibban v. JOpen, LLC*, C.A. N. 23-2-01183-08, Mar. 14, 2025 ("Gabbay Mar. 2025 Tr.").

[5] *See* Palaio Oct. 2025 Tr. at 93:3-14.

[6] Gabbay Mar. 2025 Tr. at 213:20-216:9, 302:15-21, 91:14-94:25.

[7] *Tucker v. Palaio*, No. 3:25CV488 (DJN), 2026 WL 1747968, at *11 (E.D. Va. June 17, 2026) ("*Tucker* Op.").

26. JOpen's PartyNuts.com website is a business-to-business platform that offers wholesalers access to Kratom Products at wholesale pricing.[8]

27. Since approximately 2012, JOpen has purchased Kratom Products directly from Martian Sales and distributed them.[9] Later, JOpen took on responsibilities for arranging packaging for Kratom Products and paying bills on behalf of Martian Sales.

28. Under its distribution agreement with Martian Sales, JOpen retains a 29% distribution fee on Kratom Product sales, using the remainder to pay the manufacturer, packager, and sourcing company, and to fund donations made on Martian Sales' behalf to the American Kratom Association ("AKA").[10]

29. JOpen has also participated in placing the fictitious "Choice Organics" distributor name, an address in Los Angeles, and a phone number on the Kratom Products' labels.[11]

30. Martian Sales has been using the trade name A1 Wholesale when acting as the distributor of Kratom Products since 2015.[12]

31. A1 Wholesale is also responsible for warnings and labeling on Kratom Products.[13]

### 2. MARTIAN SALES, INC.

32. Defendant Martian Sales is a Wyoming corporation with its principal place of business located at 30 N. Gould Street, Suite R, Sheridan, Wyoming 82801.[14]

---

[8] *Home page*, PartyNuts.com, https://www.partynuts.com/Party-Nuts-Distribution-Smoke-Shop-Headshop-Wholesale-Natural-smoking-Blends-Kratom-Glass-Pipes-vaporizers-Herbs.

[9] Gabbay Mar. 2025 Tr. at 269:24-271:10.

[10] *Id.* at 283:10-284:25, 285:16-286:9.

[11] *Id.* at 80:7-25, 212:15-213:19, 219:17-24.

[12] Rule 30(b)(6) deposition of Martian Sales, Inc. (Mark Reilly) at 56:5-21, *Moller v. Martian Sales, Inc.*, No. 24-0228-WBV-DPC, Oct. 28, 2024 ("Martian Oct. 2024 30(b)(6). Tr.").

[13] Martian Sales 30(b)(6) Tr. at 266:6-267:22.

[14] Wyo. Sec'y of State, Profit Corporation Annual Report: Martian Sales, Inc. (April 22, 2026).

33. Mark Daniel James Reilly ("Reilly") formed Martian Sales on or around July 19, 2012 and serves as its Director, President, Secretary, and Treasurer.[15]

34. In its 2021 and 2022 Annual Reports, Martian Sales also used the address of 2550 Sandy Plains Road Suite 225, #319, Marietta, GA 30066 as its principal place of business. 2550 Sandy Plains Road, Suite 225, Marietta, Georgia is the address for a UPS Store.[16]

35. Attorneys from the law firm of Gomel, Davis & Watson, LLP, 245 Peachtree Center Ave., NE., Ste. 2400, Atlanta, GA 30303 ("Gomel, Davis & Watson") signed Martian Sales' 2020 and 2021 Annual Reports.

36. Martian Sales does not have insurance.[17]

37. Martian Sales owns all O.P.M.S brand trademarks,[18] which encompass both standard character wordmarks and stylized graphic design logos.

38. Through one or more Contract Processing Agreement(s), Martian Sales maintains operational control over the O.P.M.S. product line.[19]

39. Martian Sales has maintained ongoing agreements for the supply of kratom, the distribution of Kratom Products, and the processing of Kratom Products.[20]

---

[15] Martian Sales 30(b)(6) Tr. at 176:1-18; Wyo. Sec'y of State, Profit Corporation Annual Report: Martian Sales, Inc. (April 22, 2026).

[16] Jennings Sept. 2024 Tr. at 63:13-25; *see also* The UPS Store Sandy Plains Road, https://locations.theupsstore.com/ga/marietta/2550-sandy-plains-rd.

[17] Martian Sales 30(b)(6) Tr. at 158:6-8.

[18] *Id.* at 275:12-16.

[19] *O.P.M.S.*, U.S. Trademark Registration No. 5,931,306 (filed May 23, 2019; registered Dec. 10, 2019); *O.P.M.S.*, U.S. Trademark Registration No. 5,942,734 (filed May 23, 2019; registered Dec. 24, 2019); *see* Hannah Critchfield, *A major US kratom brand relies on a maze of companies. Here's the list*, Tampa Bay Times (Dec. 19, 2023), https://www.tampabay.com/investigations/2023/12/19/major-us-kratom-brand-relies-maze-companies-heres-list/ ("Critchfield")..

[20] Martian Sales 30(b)(6) Tr. at 248:13-249:20.

40. Martian Sales contracts with other entities to distribute Kratom Products throughout the United States.[21]

41. Martian Sales owns the website www.OPMSkratom.com, which serves as the online sales platform for Kratom Products.

42. Reilly, the President, Secretary, Treasurer, and sole Director of Defendant Martian Sales, does not have the ability to edit the content on the www.OPMSkratom.com website.[22] Nor does he know (a) who receives the contact requests that are submitted on the www.OPMSkratom.com website;[23] (b) who responds to those requests; or (c) if a third-party contractor is tasked with responding to them.[24] Reilly also has no way of knowing whether any consumer inquiries have been submitted through the website's contact page.[25] That is, although Martian Sales maintains ownership of the website, it is managed by JOpen, and Martian Sales does not have access to it.[26]

43. A1 Wholesale is the sole entity that manages the content on the www.OPMSkratom.com website.[27]

44. Martian Sales issues payment for services related to Kratom Products from its business account on an "if needed" basis.[28]

---

[21] *Id.* at 276:3-6.

[22] Martian Sales 30(b)(6) Tr. at 197:8-21.

[23] *Id.* at 194:15-195:3.

[24] *Id.*

[25] *Id.* at 195:8-22.

[26] *See* Rule 30(b)(6) deposition of JOpen, LLC at 98:5-99:6, 268:5-269:9, 302-15-19, *McKibban v. JOpen, LLC*, C.A. N. 23-2-01183-08, Mar. 14, 2025 ("JOpen Tr.").

[27] *Id.* at 197:8-21.

[28] *Id.* at 9:6-13.

45. Martian Sales does not compensate A1 Wholesale for any of the services it performs on behalf of Martian Sales.[29]

**3. PUR BOTANICALS, LLC**

46. Defendant Pur Botanicals (d/b/a Choice Organics) is a Georgia limited liability company with its principal place of business located at 2679 Arbor Spring Way, Suite 214, Marietta, GA 30066, which is the same address used by Mark Jennings ("Jennings").

47. Pur Botanicals's Articles of Organization list Peyton Palaio ("Palaio")[30] and Jennings as its organizers.

48. At the time Pur Botanicals was formed, its principal place of business address was 1880 W. Oak Pkwy., Suite 214, Marietta, GA 30066, which is the same address used by Jennings at that time.

49. Choice Organics is listed as the distributor of Kratom Products on the product packaging with an address listed as a building in Los Angeles, California.[31]

50. Choice Organics is also listed in O.P.M.S' Refund Policy as the entity to contact for a refund.

51. In addition, Choice Organics is listed in O.P.M.S' Terms and Conditions as the entity to contact to initiate arbitration or to opt-out of O.P.M.S' arbitration provisions.[32]

---

[29] *Id.* at 9:10:20.

[30] Palaio is the creator of the O.P.M.S. brand and has been publicly tied to the management of Defendants. *See* Critchfield, *supra* n.19.

[31] Critchfield, *supra* n.19.

[32] *Terms and Conditions of Product Use*, O.P.M.S. Kratom, https://opmskratom.com/terms-conditions.

### 4. JOHN DOE CORPORATIONS 1-10

52. Defendant John Doe Corporations 1 through 10 are corporations associated with the corporate network of Entity Defendants, the names and addresses of which are presently unknown.

### 5. OTHER JOHN DOE ENTITIES 1-10

53. Defendants John Doe Entities 1 through 10 are other persons or legal entities associated with the corporate network of Entity Defendants, the names and addresses of which are presently unknown.

54. Defendant John Doe Entities 1-10 have been used within the network of Entity Defendants to enable Defendants to avoid accountability for their activities relating to the marketing and sale of Kratom Products in Maryland and the City, and to obscure Defendants' true identities.

55. Defendant John Doe Entities 1-10 should be treated as alter egos of Defendants for purposes of jurisdiction and liability, as they have been under the complete domination of Defendants at all relevant times, have been used in furtherance of a unified commercial purpose as mechanisms to perpetrate the violations detailed herein, and have, accordingly, proximately caused injury to the City.

56. Defendant John Doe Entities 1-10 and their associated trade names have shared principals, personnel, addresses, registered agents, and counsel,[33] and been used, among other

---

[33] *See, e.g.*, Critchfield, *supra* n.19; Martian Sales 30(b)(6) Tr. at 101:1-21 (detailing how Martian Sales has used an entity called "Calibre Manufacturing, LLC" to encapsulate kratom to be sold as Kratom Products); Palaio Oct. 2025 Tr. at 12:17-21 (acknowledging that an entity called "Nuza, LLC" maintains sourcing and/or supply agreements with Martian Sales for raw kratom material); Jennings Sept. 2024 Tr. at 346:18-349:5 (describing how an entity called "CC US Holdings, LLC" serves as the headquarters and back office for other shell companies within the corporate network of Entity Defendants, including Calibre Manufacturing and Nuza, and provides HR, accounting,

things, to contract for and supply the commercial needs of the broader corporate network of Entity Defendants.[34]

57. Defendants should be treated as a single entity for purposes of this litigation because they have:

a. Commingled their funds and other assets and failed to segregate funds between them;

b. Treated each other's assets as their own;

c. Failed to maintain minutes and corporate records and confused the records of the other Defendant entities;

d. Used the same business locations and employed the same employees;

e. Share a unity of interest and ownership that each of the Defendants acts merely as a shell of the web of Defendants as a whole; and

f. Failed to adequately capitalize themselves such that if only one entity were to be held liable for the actions of the whole it would be unable to compensate the City for Defendants' harms and thereby promote injustice, unfairness, and fraud.

## III. JURISDICTION AND VENUE

58. This Court has personal jurisdiction over Defendants under section 6-103 of the Maryland Code Courts and Judicial Procedures and the United States Constitution, because through the corporate network of Defendants they have regularly transacted business in Maryland; have purposefully directed business activities in Maryland, including specifically in Baltimore;

---

and IT services to these entities.).

[34] Critchfield, *supra* n.19; *see also* Palaio Oct. 2025 Tr. at 12:17-21.

and have engaged in unlawful practices and caused injury in Maryland, including specifically in Baltimore.

59. As alleged herein, Defendants publicly represent that their Kratom Products, which are sold throughout the United States, including in the State of Maryland and the City of Baltimore, are safe, provide therapeutic benefits, and enhance the well-being of consumers while failing to disclose that kratom, and their more potent kratom extracts, are not safe and are highly addictive substances.

60. Defendants have shipped, advertised, marketed, distributed, and sold highly addictive, dangerous Kratom Products in the City between at least 2012 and the present, and committed the wrongful acts and omissions herein in Maryland, including specifically in Baltimore. Each Defendant entered the State of Maryland and the City of Baltimore with the knowledge and intent that its Kratom Products would be widely disseminated therein.

61. Each Defendant, through its participation in the corporate network of Entity Defendants, knowingly and intentionally directed Kratom Products into the State of Maryland and the City of Baltimore with the knowledge and intent that Kratom Products would reach the City and City residents.

62. Each Defendant possessed further knowledge that kratom is not safe and is a highly addictive substance, and that its representations that Kratom Products were safe and enhanced the well-being of consumers were false and misleading, as alleged herein.

63. Each Defendant knew that its representations would be received by City residents.

64. Each Defendant possessed further knowledge that the adverse effects of Kratom Products would be felt by City residents.

65. By shipping, marketing, advertising, distributing for sale, and selling Kratom Products in the State of Maryland and the City of Baltimore, Defendants have purposefully availed themselves, through specific acts, of the privilege of conducting activities within the State of Maryland and have conducted illegal acts within the State of Maryland and the City of Baltimore.

66. This Court has personal jurisdiction over Defendant JOpen because it committed the acts complained of herein in the State of Maryland and the City of Baltimore. Jurisdiction for Defendants other than JOpen can be imputed based on JOpen's contacts through an alter ego theory or upon the acts or contacts of a co-conspirator through a common law conspiracy.

67. JOpen has acted as a distributor of Kratom Products for the web of Entity Defendants through its www.PartyNuts.com website and is the entity that collects, investigates, and responds to customer complaints or adverse event reports concerning Kratom Products. The State of Maryland and the City of Baltimore are among the markets where Kratom Products are sold. As alleged herein, the Defendants constitute alter egos of JOpen, and, therefore, the corporate veil should also be pierced for purposes of personal judication with respect to the Defendants.

68. This Court has personal jurisdiction over Defendant Martian Sales because it constitutes an alter ego of JOpen and therefore meets the requirements for piercing of the corporate veil for purposes of personal jurisdiction.[35] As other courts have held, JOpen funds and performs the day-to-day operation of Martian Sales and "functionally controls Martian Sales to obfuscate visibility into the operations of the [corporate network of Entity Defendants] and avoid potential liability"[36] Martian Sales' and JOpen's relationship evolved over an eight-year period without a

[35] *See Tucker* Op. at *8, 11-13.

[36] *Id.*

written agreement.[37] During this time, JOpen assumed an increasing amount of Martian Sales' corporate responsibilities, including paying its invoices (including as a "favor" to Martian Sales, with no expectation of repayment) and controlling its website.[38] In addition, JOpen compensates Martian Sales' manager with a flat sum, despite Martian Sales purportedly still owing JOpen money. Martian Sales has formal written agreements with JOpen, pursuant to which Martian Sales supplies JOpen with Kratom Products for distribution, JOpen uses the resulting proceeds to pay itself and Martian Sales' creditors, but does not return any of the proceeds to Martian Sales itself, which further support finding personal jurisdiction over Martian Sales.[39] The fact that JOpen uses a portion of revenue from its sales of Kratom Products to pay Reilly, Martian Sales' manager, "whenever [JOpen] feels like paying him" and in an agreed-upon amount scaled to the length of his business relationship with JOpen and not based on the amount of revenue generated.[40]

69. This Court has personal jurisdiction over Defendant Pur Botanicals because it constitutes an alter ego of JOpen. Specifically, Pur Botanicals was organized by Palaio (the mastermind behind the corporate network of Defendants) and Jennings (who manages and controls various corporate entities and their associated trade names within the Defendants' corporate network, including, but not limited to, Pur Botanicals, is listed as the distributor of Kratom Products on the product packaging, the entity to contact for a refund on O.P.M.S.' Refund Policy, and in O.P.M.S.' Terms and Conditions as the entity to contact to initiate or opt-out of O.P.M.S.' arbitration provisions.

---

[37] *Id.* at *11-13.

[38] *Id.*

[39] *Id.*

[40] *Id.*

70. Moreover, in furtherance of the corporate network of Entity Defendants, each Individual Defendant caused to be formed the interconnected web of entities that comprise the Entity Defendants and employ the web of Entity Defendants to conceal the scope of their wrongful action. In addition, each Individual Defendant engaged in overt wrongful acts, including, but not limited to the following:

a. Misrepresenting that Kratom Products, have characteristics, ingredients, uses, or benefits that they do not have while failing to disclose the active ingredients in their Kratom Products are similar to opioids and highly addictive substances and falsely implying in their labeling, packaging, advertising, marketing, and selling of Kratom Products that Kratom Products are safe or have therapeutic benefits that they do not have, as alleged herein, in violation of MCPA § 13-301(2)(i);

b. Misrepresenting that Kratom Products are of a particular standard, quality or grade which they are not, as alleged herein, in violation of MCPA § 13-301(2)(iv) and thus, in violation of the Ordinance;

c. Failing to disclose the material fact that use of Kratom Products as intended are not safe or do not provide the therapeutic benefits that Defendants represent, in violation of MCPA § 13-301(3) and thus, in violation of the Ordinance;

d. Failing to disclose that the active ingredients in their Kratom Products are similar to opioids and highly addictive substances and falsely implying in their labeling, packaging, advertising, marketing, and selling of Kratom Products that Kratom Products are safe or have therapeutic benefits that they do not have.

71. This Court has subject matter jurisdiction because the claims at issue arise under a City of Baltimore ordinance. Md. Code Ann., Cts. & Jud. Proc. § 1-501 ("The circuit courts are

the highest common-law and equity courts of record exercising original jurisdiction within the State. Each has full common law and equity powers and jurisdiction in all civil . . . cases within its county[.]").

72. The City brings this action as the sole plaintiff, and no class or mass action is raised herein. Any alleged class or mass action is expressly disavowed, and to the extent that anything in this Complaint is alleged to be to the contrary, this paragraph is controlling.

73. Similarly, federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 is not invoked by this Complaint, as it sets forth exclusively state law claims against Defendants. The City does not plead, expressly or implicitly, any cause of action or request any remedy, which is based on federal law. The issues presented in this Complaint do not implicate significant federal issues, turn on the substantial federal interpretation of federal law, or raise a substantial federal question. Moreover, no federal question is possibly or necessarily raised in this Complaint that is potentially significant to the federal system as a whole, as required for substantial federal question jurisdiction. *See Gunn v. Minton*, 568 U.S. 251, 258, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013). The only causes of action claimed, and the only remedies sought by the City herein, are for those based upon the City's Consumer Protection Ordinance, Baltimore City Code, Art. 2, § 4. Any alleged federal claim or federal question is expressly disavowed, and to the extent that anything in this Complaint is alleged to be to the contrary, this paragraph is controlling.

74. Venue is proper in this Court pursuant to Maryland Code, Cts. & Jud. Proc. § 6-201, because the City's claims arise in the City of Baltimore and a substantial part of the acts or omissions giving ride to the City's claims occurred in the City. Md. Code Ann. § 6-201 ("[A] civil action shall be brought in a county where the defendant . . . carries on a regular business[.]").

## IV. FACTUAL ALLEGATIONS

### A. Dangers of Kratom Use

75. Like opioid compounds, kratom use presents substantial risks to the health and well-being of those who consume it.[41]

76. Kratom's psychoactive compounds bind to the brain's µ-opioid receptors, which results in a pharmacological response similar to those induced by opioids and opiates like morphine, fentanyl, and heroin.[42]

77. When ingested, these products are known to bring on a "high" that is more subtle than those associated with similar opiate-based products, such as hydrocodone, but not fundamentally dissimilar in its immediate or long-term effects.[43]

78. Kratom is highly addictive, acts similar to opioids, and has been known to cause overdoses, including overdose deaths.[44]

79. Many kratom users report experiencing withdrawal symptoms when stopping use after as little as six months.[45]

---

[41] *Kratom: What you need to know about this "natural" opioid*, University of Utah Health (Nov. 3, 2025), https://healthcare.utah.edu/healthfeed/2025/11/kratom-what-you-need-know-about-natural-opioid ("Kratom: What you need to know").

[42] *Id.*

[43] Legislative Analysis and Public Policy Association, *Regulation of Kratom in America: Update* (Sept. 2022) ("Legislative Analysis").

[44] *Parents sue over son's death after he took kratom supplement*, AP (Oct. 27, 2022), https://apnews.com/article/health-business-lawsuits-georgia-us-food-and-drug-administration46027961c11d27c3cee56c547a4a1664; Nina Joudeh, *Moment NBA Star Brandon Clarke is caught with lethal 'gas station heroin' – before begin found dead in California*, New York Post (July 12, 2026), https://nypost.com/2026/07/12/sports/moment-nba-star-brandon-clarke-is-caught-with-kratom-before-being-found-dead-in-la/?utm_source=facebook&utm_campaign=nypost&sr_share=facebook&utm_medium=social.

[45] Mayo Clinic Staff, *Kratom: Unsafe and Ineffective*, (June 18, 2024), https://www.mayoclinic.org/diseases-conditions/prescription-drug-abuse/in-depth/kratom/art-20402171.

80. The U.S. Centers for Disease Control and Prevention ("CDC") has found that kratom abuse leads to agitation, irritability, tachycardia, nausea, drowsiness, and hypertension.[46]

81. Kratom users experience hepatotoxicity (liver damage), psychosis, seizure, weight loss, insomnia, tachycardia, vomiting, poor concentration, hallucinations, and death.[47] In addition, kratom users frequently experience "smells, tastes, sights, touches or sounds that seem real but aren't, called hallucinations[,] false beliefs, called delusions, depression[,] trouble breathing[,] confusion, tremors, and seizures," and death.[48]

82. Emerging scientific and medical research unequivocally connects kratom with "accumulating evidence of adverse effects, dependence liability, and rare fatalities, particularly involving adulterated products or polydrug use."[49]

83. U.S. poison centers received 660 calls related to kratom exposure between 2010 and 2015.[50]

84. As of August 30, 2016, DEA was aware of 15 kratom-related deaths between 2014 and 2016.[51]

---

[46] *See DEA Announces Intent to Schedule Kratom*, DEA Public Affairs Press Release (Aug. 30, 2016), https://www.dea.gov/press-releases/2016/08/30/dea-announces-intent-schedule-kratom ("DEA Press Release").

[47] *See id.*

[48] Mayo Clinic Staff, *supra* n.45.

[49] S.E. Hemby, et al., *Multifaceted modulation of human opioid receptors by kratom alkaloids: binding affinity, functional selectivity, and allosteric activity*, 17 Front. Pharmacol. (2026), https://www.frontiersin.org/journals/pharmacology/articles/10.3389/fphar.2026.1763551/full.

[50] *See* DEA Press Release, *supra* n.46.

[51] DEA Press Release, *supra* n.46.

85. The consumption of kratom products has been directly linked to a 1,200% uptick of poisoning cases across the U.S. in the past decade, according to the Center for Disease Control.[52]

86. According to the Maryland Department of Health, from 2015 to 2020, there were 78 unintentional drug intoxication deaths in Maryland with mitragynine detected.[53]

87. A dramatic upsurge in potency across kratom product offerings, as a result of advances in the synthetic production of kratom's psychoactive elements, including new products which have isolated a purer form of kratom's 7-OH, has been shown to exceed the pharmacological potency of morphine.[54]

**B. Kratom Use in the United States**

88. Though initially introduced to the U.S. market as a result of immigration and the return of soldiers from the Vietnam War, kratom has gained rapid and widespread use in the past two decades, booming to a $1.3 billion industry by 2019.[55]

89. As of 2024, the United States dominated global kratom consumption with a $2 billion market serving 1.7 million users, which represents 41.28% of the worldwide market share.[56]

---

[52] Eleanor Blair Towers, et al., *Increases in Kratom-Related Reports to Poison Centers — National Poison Data System, United States, 2015–2025*, 75 Morbidity and Mortality Weekly Report 11 (March 26, 2026), http://dx.doi.org/10.15585/mmwr.mm7511a1.

[53] Mallory Sofastaii, *Maryland man's death linked to kratom; herbal substance center of heated debate*, Maryland2 News (Nov. 16, 2023), https://www.wmar2news.com/news/local-news/investigations/maryland-mans-death-linked-to-kratom-herbal-substance-center-of-heated-debate.

[54] Kratom: What you need to know, *supra* n.41; *see also*, K.M. Babu, et al., *Opioid receptors and legal highs: Salvia divinorum and Kratom*, 46 Clin. Toxicol. 2, 146-52 (Feb. 2008), https://pubmed.ncbi.nlm.nih.gov/18259963/; *Preventing the Next Wave of the Opioid Epidemic: What You Need to Know About 7-OH*, U.S. Food and Drug Administration (2025), https://www.fda.gov/media/187913/download?attachment ("Preventing the Next Wave").

[55] Legislative Analysis, *supra* n.43.

[56] *Regional Kratom Market Statistics 2024-2026: Where is Kratom Most Popular?*, EZ Kratom, (Jan. 5, 2026 ), https://ezkratom.com/regional-kratom-market-statistics/ ("Statistics").

90. In 2025, the U.S. kratom market was valued at approximately $2.56 billion.[57]

91. The kratom market is projected to expand to approximately $7.8 billion by 2032, driven by North American demand.[58]

92. As of 2024, U.S. consumer spending on kratom approached $880 annually per user.[59]

93. The typical Kratom-user profile shows 68.4-78.6% employment rates, household incomes of $50,000-59,000, and 54.2-83.9% college education rates, which positions kratom as a mainstream wellness product rather than a marginal substance.[60]

94. The data shows 53.5% of kratom users are located in large metropolitan areas.[61]

**C. Regulation of Kratom**

95. The U.S. Food and Drug Administration ("FDA") has not determined kratom, or its psychoactive compounds, to be safe and effective for any medical use.[62]

96. While the FDA has recommended banning the substance in the past, and the U.S. Drug Enforcement Administration has designated kratom as a "drug of concern," it remains legal at the federal level.[63]

---

[57] *Kratom Market to Surpass USD 7.79 Billion by 2032, Shows New Global Market Trends and Forecast Analysis: Maximize Market Research*, PR Newswire (Jan. 30, 2026), https://finance.yahoo.com/news/kratom-market-surpass-usd-7-145600034.html.

[58] Statistics, *supra* n.56.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] Legislative Analysis, *supra* n.43.

[63] *Kratom Use Rare, But More Common Among People with Opioid Use Disorder*, New York University Center for Drug Use and HIV/HCV Research (April 29, 2021), https://www.nyu.edu/about/news-publications/news/2021/april/kratom-cduhr.html.

97. Effective July 1, 2026, the retail sale of Kratom within the State of Maryland is illegal.[64]

98. Maryland regulates kratom sales and marketing under the Kratom Consumer Protection Act, Md. Code Ann., Health-Gen. § 21-2E-01 *et seq.* ("Maryland KPA").

99. The Maryland KPA requires "[a] retailer[65] that prepares, distributes, sells, or exposes for sale a kratom product shall disclose on the product label the factual basis on which the representation is made." *Id.* § 21-2E-02(a)(1).

100. In Maryland, retailers may not prepare, distribute, sell, or expose for sale a kratom product that (a) does not comply with the foregoing disclosure requirement or (b) has not been recognized as a dietary ingredient or approved drug by FDA. *Id.* §§ 21-2E-02(a)(2)(i), (ii).

101. In addition, in Maryland, it is illegal for a retailer to prepare, distribute, sell, or expose for sale adulterated or contaminated kratom products, or kratom products that do not include on their package or label the amount of MG and 7-OH contained in the product, among other things.[66]

102. The Maryland KPA also prohibits a retailer from advertising, directly or indirectly, a therapeutic benefit of kratom.[67]

---

[64] *See, e.g.*, WBFF Staff, *New laws take effect in Maryland on July 1*, Fox 45 News Baltimore (June 30, 2026), https://foxbaltimore.com/news/local/new-laws-take-effect-maryland-july-1; Kratom Consumer Protection Act, Md. Code Ann., Health-Gen. § 21-2E-01 *et seq.* (2026).

[65] The MD KCPA defines "Retailer" as a person that "(i) Sells, prepares, or maintains kratom products; or (ii) Advertises, represents, or holds itself out as selling, preparing, or maintaining kratom products." MD Health General Code § 21-2E-01(c)(1). This definition includes "a manufacturer, wholesaler, store, restaurant, hotel, catering facility, camp, bakery, delicatessen, supermarket, grocery store, convenience store, gas station, or food or drink company." *Id.* § 21-2E-01(c)(2).

[66] Md. Code Ann., Health-Gen. § 21-2E-02(b).

[67] *Id.* § 21-2E-03(a).

103. Retailers who violate the Maryland KPA are guilty of a misdemeanor and, if convicted, are subject to a fine of up to $5,000.[68]

### D. Defendants' False or Misleading Representations to Consumers Concerning the Safety of Kratom Products

104. Defendants ensure the consumers that purchase the Kratom Products that they are "safe:"

> O.P.M.S. is constantly working to combat these counterfeiters via O.P.M.S.'s legal and enforcement department ***to ensure only safe and authentic products reach consumers***.[69]
>
> * * *
>
> O.P.M.S. takes reports of any company selling fake O.P.M.S. products very seriously. Therefore, please inform us if you have any information about suspicious products ***to keep all kratom users safe***.

105. Defendants also tell consumers that "O.P.M.S. wants everyone to be safe. . . ."[70]

106. The corporate network of Entity Defendants' legal team heavily controls third-party retail and distribution of authentic O.P.M.S. products, and aggressively pursues retailers selling counterfeit O.P.M.S. products.[71] While O.P.M.S.' reseller agreements, brand policies, or similar

---

[68] *Id.* § 21-2E092(f).

[69] *O.P.M.S. Kratom Gold Authenticity*, O.P.M.S. Kratom, https://opmskratom.com/opms-gold-auth ("Kratom Gold Authenticity"); *O.P.M.S. Kratom Black Liquid Authenticity*, O.P.M.S. Kratom, https://opmskratom.com/opms-black-liquid-auth ("Kratom Black Authenticity"); *O.P.M.S. Kratom Gold Liquid Authenticity*, O.P.M.S. Kratom, https://opmskratom.com/opms-gold-liquid-auth ("Kratom Gold Liquid Authenticity"); *O.P.M.S. Kratom Black Authenticity*, O.P.M.S. Kratom, https://opmskratom.com/opms-black-auth ("Kratom Black Authenticity"); *O.P.M.S. Kratom Silver Capsules Authenticity*, O.P.M.S. Kratom, https://opmskratom.com/opms-silver-auth ("Kratom Silver Capsules Authenticity"); *O.P.M.S. Kratom Silver Powders Authenticity*, O.P.M.S. Kratom, https://opmskratom.com/opms-silver-powder-auth ("Kratom Silver Powders Authenticity").

[70] *Contact O.P.M.S.*, O.P.M.S. Kratom, https://opmskratom.com/contact.

[71] *See, e.g.*, *O.P.M.S. Kratom Authenticity Guide*, O.P.M.S. Kratom, https://opmskratom.com/authenticity-guide ("O.P.M.S. Kratom Authenticity Guide") ("Due to the serious health threat that these products pose, O.P.M.S. will treat stores that carry fake O.P.M.S. products no differently than the criminals who produce these potentially dangerous products. The O.P.M.S. legal team will go after these stores and disrupt their business aggressively with all

agreements are not publicly available, O.P.M.S. enjoys the status of being the first vendor listed on the AKA GMP Qualified Vendors List.[72]

107. According to the AKA, "to be listed on the AKA GMP Qualified Vendors List, participants must qualify and maintain the high standards of the AKA's GMP Standards Program and the products they manufacture or distribute under the standards of the program can be listed on the AKA website."[73]

108. In reality, however, AKA GMP Standards Program "is little more than a marketing ploy and does little to protect consumers."[74] Kratom companies pay AKA $5,000 per year to participate in this program and consumers are directed to those companies' websites by clicking on a banner on the AKA's website that reads: "Where can I buy safe kratom?"[75]

109. According to the *Tampa Bay Times* investigative reporting, the AKA's auditing program "is so lax that the certification shouldn't be relied upon by consumers" and is "little more than a rubber stamp that companies get to put on their labels."[76]

---

available options. . . . O.P.M.S. takes reports of any company selling fake O.P.M.S. products very seriously. . . . O.P.M.S. products have several key identifiers and unique markings to ensure customers can distinguish between an authentic product and a fake product. O.P.M.S. identifiers to distinguish authentic products from counterfeits: . . . ").

[72] *A.K.A.'s GMP Qualified Vendors*, American Kratom Association, https://www.americankratom.org/gmp-qualified-vendors ("GMP Qualified Vendors").

[73] *Kratom Association's Good Manufacturing Practice Standards Program*, American Kratom Association, https://www.americankratom.org/gmp-standards-program.

[74] Kirby Wilson, *et al.*, *Deadly Dose Part 2: As dangerous kratom products go unregulated, lobbyist write the laws*, Tampa Bay Times (Dec. 13, 2023), https://project.tampabay.com/investigations/deadly-dose/american-kratom-association-lobbyists-fda-florida/.

[75] *Id.*

[76] *Id.*

110. To protect its status as the first vendor listed on A.K.A.'s GMP Qualified Vendors List,[77] upon information and belief—and as demonstrated by the use of similar language by different retailers—O.P.M.S.' reseller agreements, brand policies, or similar agreements strictly control the branding and marketing rights to O.P.M.S.' kratom products. Thus, it can be inferred and, therefore, the City alleges, that O.P.M.S. requires retailers of Kratom Products to represent the following, among other things, concerning the purported therapeutic benefits of Kratom Products when marketing and selling them:

> **OPMS Gold Liquid Kratom Extract Shot**
>
> **Discreet and Convenient:** The compact, easy-to-carry bottle is perfect for on-the-go use—whether you need **a boost of energy or pain relief**.[78]
>
> * * *
>
> Some consumers have reported effects [from O.P.M.S. Black Liquid Kratom Extract Shots] ranging from feeling an all-day boost to energy levels and an uplifted *mood to deep relaxation and relief*.[79]
>
> * * *
>
> **Effects [from O.P.M.S. Black Kratom Capsules]:**
>
> **Pain Relief:** The high Mitragynine content provides strong analgesic effects, making these capsules effective for pain management.
>
> **Energy Boost:** Many users experience a boost in energy and alertness, ideal for starting the day or overcoming fatigue.

---

[77] *See* GMP Qualified Vendors, *supra* n.72.

[78] *OPMS Gold Liquid Kratom Extract Shot - 8ml*, Apotheca, https://www.apotheca.org/product/opms-gold-liquid-kratom-extract-shot-8ml (emphasis in original).

[79] *OPMS Black Liquid Kratom Extract Shot - 8ml*, Apotheca, https://www.apotheca.org/product/opms-black-liquid-kratom-extract-shot-8ml.

**Mood Enhancement:** OPMS Black Capsules also have uplifting effects, contributing to a better overall mood and reduced anxiety.[80]

* * *

**What Satisfied Users Are Saying [About O.P.M.S. Black Kratom Capsules]:**

**Pain Relief:** The high concentration of Mitragynine provides powerful analgesic effects, making it effective for pain management.

**Mood Enhancement:** Many users report feeling more uplifted and in a better mood after using these capsules.

**Energy and Focus:** The Kratom's energizing effects make these capsules great for users needing a boost in energy and focus.

**Calming Effects:** With minimal 7-OH-Mitragynine, there is a mild calming effect that enhances the overall experience.[81]

* * *

Who is it [O.P.M.S. Black Kratom Capsules] for? …

**Individuals Seeking Pain Relief or Mood Boost:** The potent blend of Kratom's alkaloids is perfect for users looking for a solution for pain management, mood enhancement, and increased energy.[82]

* * *

Discover the perfect balance of **energy, focus, and calm with OPMS Kratom Green Vein Malay Powder**. Sourced from the lush jungles of Southeast Asia, users report this exceptional strain offers a smooth, long-lasting experience that helps support both mental clarity and physical well-being. Known for its **uplifting and mood-enhancing properties**, satisfied customers say Green Vein Malay is ideal for those who want to stay energized and focused throughout

---

[80] *OPMS Black Capsules - 115mg - 2ct/ 3ct / 5ct*, Apotheca, https://www.apotheca.org/product/opms-black-kratom-capsules-2-3-5ct (emphasis in original).

[81] *OPMS Gold Capsules - 90mg - 2ct / 3ct / 5ct*, Apotheca, https://www.apotheca.org/product/opms-gold-kratom-capsules-2-3-5ct-sizes (emphasis in original).

[82] *Id.* (emphasis in original).

the day without experiencing the overstimulation that can come with other kratom strains.[83]

**Why Choose OPMS Kratom Green Vein Malay Powder?**

- **Balanced energy & focus**: Green Vein Malay is ideal for increasing **mental clarity**, boosting **focus**, and maintaining **steady energy levels** throughout the day.

- **Mood enhancement**: Known for its ability to uplift your mood, this strain can help you stay positive and productive, even during stressful moments.

* * *

**What Makes OPMS Kratom Green Vein Malay Powder Special? Green Vein Malay** is a versatile kratom strain that strikes a perfect balance between stimulating effects and soothing calm. Unlike some other strains that can cause a rush of energy or overwhelming sedation, Green Vein Malay offers a **smooth**, **focused**, and **uplifting** experience that helps you stay energized and productive while maintaining mental clarity. It's especially great for tasks that require sustained attention or concentration. Additionally, its mood-lifting properties make it a go-to choice for individuals seeking emotional support or a natural way to combat feelings of stress or anxiety.

**Benefits of OPMS Kratom Green Vein Malay Powder:**

- **Boosts focus & productivity**: Green Vein Malay is perfect for those who need to stay **focused** and **alert** throughout the day, making it ideal for work, studying, or creative tasks.

- **Sustained energy**: Unlike more stimulating strains, Green Vein Malay provides a **steady**, **long-lasting** boost of energy without the crash, helping you stay productive throughout the day.

- **Mood enhancement**: Feel more positive and emotionally balanced, as Green Vein Malay is known to uplift mood and promote feelings of well-being.

- **Natural stress relief**: Known for its ability to ease anxiety and reduce stress, this strain helps you feel more **calm** and **relaxed**.[84]

* * *

[83] *OPMS Kratom Green Vein Malay Powder - 1oz / 4oz / 16oz*, Apotheca, https://www.apotheca.org/product/opms-green-vein-malay-kratom-powder-multiple-sizes (emphasis in original).

[84] *Id.* (emphasis in original).

**The OPMS Kratom Experience:** When you choose **OPMS Kratom Green Vein Malay Powder**, you're guaranteed a **premium, consistent kratom experience**. OPMS's commitment to quality ensures that every batch is crafted to provide you with **smooth, reliable effects**. Whether you're using it to stay focused, boost your mood, or energize your day, Green Vein Malay is the perfect strain for achieving balance without feeling overstimulated.[85]

* * *

**Relax, Unwind, and Experience Natural Relief with OPMS Kratom Red Vein Maeng Da Powder**

Discover the powerful calming effects of **OPMS Kratom Red Vein Maeng Da Powder**, a premium kratom strain known by users worldwide for its **relaxing**, **mood-enhancing**, and **pain-relieving** properties. Sourced from the fertile lands of Southeast Asia, **Red Vein Maeng Da** is one of the most sought-after strains for those looking to experience **natural relief** from stress, discomfort, and fatigue, all while enhancing mood and relaxation.[86]

* * *

**Why Choose OPMS Kratom Red Vein Maeng Da Powder?**

- **Relaxing and soothing**: Red Vein Maeng Da is widely known for its **calming effects**, making it ideal for reducing anxiety, stress, and promoting a sense of **peaceful relaxation**.
- **Pain relief**: This strain is highly regarded for its **natural analgesic properties**, offering **relief from discomfort** without the need for harsh pharmaceutical alternatives.
- **Mood enhancement**: Known for its ability to **boost mood** and provide a sense of well-being, Red Vein Maeng Da is perfect for users seeking **natural emotional support**.
- **Premium quality**: OPMS is committed to providing only the **purest**, **most potent** kratom, sourced from trusted and responsible farms in Southeast Asia.[87]

* * *

---

[85] *Id.*

[86] *OPMS Kratom Red Vein Maeng Da Powder - 1oz / 4oz / 16oz*, Apotheca, https://www.apotheca.org/product/opms-red-vein-maeng-da-kratom-powder-multiple-sizes (emphasis in original).

[87] *Id.* (emphasis in original).

**What Makes OPMS Kratom Red Vein Maeng Da Powder Special? Red Vein Maeng Da** is one of the most potent and well-balanced strains in the kratom world, known for its **relaxing** yet **uplifting** effects. It's perfect for users who need a **natural energy boost** without sacrificing relaxation. This strain provides a **smooth, euphoric sensation**, helping to alleviate stress and anxiety, while also offering significant relief from physical discomfort. Whether you're looking to unwind after a stressful day or seek relief from chronic pain, OPMS Red Vein Maeng Da Powder is an excellent choice.

**Benefits of OPMS Kratom Red Vein Maeng Da Powder:**

**Stress relief & relaxation**: The **calming** properties of Red Vein Maeng Da make it ideal for reducing stress, helping you relax and unwind after a long day.

**Natural pain relief**: This strain is commonly used by kratom enthusiasts for its **mild analgesic effects**, providing relief from discomfort and promoting relaxation.

**Mood enhancement**: Red Vein Maeng Da is known for boosting **mood** and **emotional well-being**, making it a perfect choice for those seeking natural emotional support.[88]

* * *

**The OPMS Kratom Experience:** When you choose **OPMS Kratom Red Vein Maeng Da Powder**, you're guaranteed a **premium**, **consistent kratom experience**. This strain offers a perfect balance of **relaxation**, **mood enhancement**, and **pain relief**, making it suitable for a variety of needs.[89]

* * *

**OPMS Kratom Green Vein Thai Powder**

**Experience Balanced Energy and Focus with OPMS Kratom Green Vein Thai Powder**

Discover the natural benefits of **OPMS Kratom Green Vein Thai Powder**, an exceptional kratom strain sourced from the tropical regions of Thailand. Renowned by users worldwide for its **balanced effects**, this **Green Vein strain** delivers a perfect blend of **energy**, **focus**, and **mood enhancement**. Whether you're looking to boost productivity, elevate your mood, or maintain energy throughout the day,

[88] *Id.* (emphasis in original).

[89] *Id.* (emphasis in original).

satisfied customers report this kratom powder offers a **smooth**, effective experience that supports your mental and physical well-being.[90]

* * *

**Why Choose OPMS Kratom Green Vein Thai Powder?**

**Balanced energy & focus**: Green Vein Thai is celebrated for its ability to enhance **mental clarity**, boost **energy**, and improve focus—ideal for productivity and focus-driven tasks.

**Mood boosting**: Known for its ability to uplift the mood and reduce stress, this strain helps you maintain a **positive outlook**.[91]

* * *

**What Makes OPMS Kratom Green Vein Thai Powder Special? Green Vein Thai** is widely regarded for its **well-rounded effects**. It delivers a moderate boost in energy, which makes it perfect for those who want to stay active and alert throughout the day without the jitters that often accompany other stimulants. Additionally, it helps promote **mental clarity** and **focus**, making it a great choice for anyone looking to improve productivity or get through tasks with ease. The **uplifting effects** also promote a positive mood, making this strain ideal for those dealing with stress or seeking a natural mood enhancement.

**Benefits of OPMS Kratom Green Vein Thai Powder:**

**Boosts energy and focus**: Green Vein Thai is an excellent option for increasing **productivity** and staying **mentally sharp**, making it great for studying, working, or tackling tasks that require sustained attention.

**Mood enhancement**: Known for its ability to enhance **mood** and reduce feelings of stress or anxiety, it's perfect for maintaining a **positive mindset** throughout the day.

**Natural balance**: The effects of Green Vein Thai are **smooth and balanced**, making it ideal for daytime use when you need to stay energized, focused, and calm.[92]

* * *

---

[90] *OPMS Kratom Green Vein Malay Powder - 1oz / 4oz / 16oz*, Apotheca, https://www.apotheca.org/product/opms-green-vein-malay-kratom-powder-multiple-sizes (emphasis in original).

[91] *Id.* (emphasis in original).

[92] *Id.* (emphasis in original).

**OPMS Kratom Red Vein Sumatra Powder**

**Soothe Your Mind and Body with OPMS Kratom Red Vein Sumatra Powder**

Experience the relaxing power of OPMS **Kratom Red Vein Sumatra Powder**, a premium kratom strain carefully sourced from the lush, tropical regions of **Sumatra**. Users report its **comforting, calming effects.** This Red Vein strain is *perfect for those looking to unwind, relieve stress, and* enjoy a **natural mood lift**. Whether you're winding down after a long day or seeking relief from discomfort, OPMS Red Vein Sumatra provides a balanced and effective experience.[93]

* * *

**Why Choose OPMS Kratom Red Vein Sumatra Powder?**

**Relaxing effects:** Red Vein Sumatra is known for its **calming** properties, ideal for promoting **relaxation** and easing daily stress.

**Pain relief:** This strain is particularly popular among users seeking **relief from discomfort** and physical tension.

**Quality you can trust:** OPMS is committed to providing only the **purest** and **most** ***potent*** *kratom, sourced responsibly from trusted farms.*[94]

* * *

**What Makes OPMS Kratom Red Vein Sumatra Powder Special?** Sourced from the **Sumatra** region, Red Vein Sumatra is widely known for its **mild to moderate sedative effects**, making it a go-to choice for those looking for relaxation without feeling overly sedated. This kratom strain delivers a **smooth, balanced experience** that is perfect for **stress relief, muscle relaxation**, and a general sense of **well-being**. Whether you are seeking to unwind after a busy day or find a natural alternative to help with discomfort, Red Vein Sumatra provides an effective, gentle solution.

**Benefits of OPMS Kratom Red Vein Sumatra Powder:**

***Natural relaxation:*** *Red Vein Sumatra is famous for its* ***calming*** *effects, making* it ideal for easing tension and promoting relaxation.

---

[93] *OPMS Kratom Red Vein Sumatra Powder - 1oz / 4oz / 16oz*, Apotheca, https://www.apotheca.org/product/opms-red-vein-sumatra-kratom-powder-multiple-sizes (emphasis added).

[94] *Id.* (emphasis added).

**Stress & anxiety relief:** Known for its ability to reduce **stress** and enhance **mood**, helping you feel more balanced and at ease.

**Pain management:** This strain is highly regarded for its **mild analgesic properties**, perfect for users seeking natural **pain relief** without harsh side effects.[95]

* * *

**The OPMS Kratom Experience:** With **OPMS Kratom Red Vein Sumatra Powder**, you get **consistent, premium-quality kratom** that delivers reliable results. This strain provides a gentle, natural lift that helps you unwind after a stressful day, while also offering relief from physical discomfort. Whether you use it for relaxation, stress relief, or to help soothe your body after intense activity, OPMS Kratom ensures a **clean, pure experience** that you can count on every time.[96]

Pure Leaf markets O.P.M.S. Red Kratom Extract Capsules as "offer[ing] a premium, concentrated kratom experience crafted for those seeking deeply soothing and long-lasting effects. Red vein kratom is known for its calming, centering, and comforting qualities, making these capsules an excellent choice for unwinding after a long day, promoting a sense of ease, or enhancing overall well-being."[97]

* * *

Formulated with red vein kratom, this shot [OPMS Red Liquid Kratom Extract Shot] is ideal for those looking for deep relaxation, calm, and mood support. Red strains are widely appreciated for their soothing and sedative-like effects, making this extract shot an excellent choice for evening use, stress relief, or restful support after a long day. Whether you're seeking mental calm or physical ease, this liquid shot delivers fast onset and lasting results in just one dose.[98]

Key Details: … Delivers deep relaxation, mood support, and stress relief.[99]

* * *

[95] *Id.* (emphasis added).

[96] *Id.* (emphasis added).

[97] *OPMS Red Kratom Extract Capsules*, Pure Leaf Kratom, https://pureleafkratom.com/products/opms-red-kratom-extract-capsules.html.

[98] *OPMS Red Liquid Kratom Extract Shot 9.76mL*, Pure Leaf Kratom, https://pureleafkratom.com/products/opms-red-liquid-kratom-extract-shot-9-76ml.html.

[99] *Id.*

OPMS Silver Green Vein Maeng Da Kratom Powder . . . offer[s] both a natural energy boost and a sense of clarity. . . . For those seeking a natural and way to elevate their energy levels, improve focus, and enjoy a renewed sense of well-being, OPMS Silver Green Vein Maeng Da Kratom Powder is the go-to choice that encapsulates the essence of this botanical.[100]

Benefits of Green Vein Maeng Da Kratom . . . Many people report that it provides a smooth boost in focus and mental clarity without feeling overly stimulating. It may also promote a sense of calm productivity, helping users stay relaxed yet engaged. Some individuals use it for mild mood enhancement, noting improved motivation and a more positive outlook. Others mention gentle physical ease that supports daily comfort without heavy sedation. Because its effects tend to fall between red and white strains, Green Maeng Da is commonly chosen for daytime use when both alertness and composure are desired.[101]

111. Defendants' representations that:

O.P.M.S.' Silver White Vein Indo O.M.P.S. kratom products are marketed as "offering a convenient and effective way to support your overall well-being."[102]

* * *

users should "[e]xpect a smooth and gradual release of effects that revitalizes both mind and body, allowing you to embrace the benefits of Kratom in a balanced and enjoyable manner" and imploring consumers to "trust OPMS to be your guiding light, leading you towards natural well-being"[103]

* * *

"Red Vein OPMS Kratom is known for its potential to support relaxation, White Vein for its invigorating and energizing effects, and Green Vein offers a balance of both relaxation and energy"[104]

* * *

---

[100] *OPMS Silver Green Vein Maeng Da Kratom Powder*, Pure Leaf Kratom, https://pureleafkratom.com/products/opms-silver-green-vein-maeng-da-kratom-powder.

[101] *Id.*

[102] *White Indo OPMS Silver Kratom Capsules 60ct*, Olofly, https://olofly.com/product/white-indo-opms-silver-kratom-capsules-60ct/.

[103] *OPMS Silver White Vein Indo Kratom Powder*, Pure Leaf Kratom, https://pureleafkratom.com/products/opms-silver-white-vein-indo-kratom-powder.

[104] *OPMS Kratom*, Pure Leaf Kratom, https://pureleafkratom.com/opms-kratom/.

> "[t]hese extract shots [O.P.M.S. Kratom Shots] are available in bottles that you can grab on the go and sip through the day to feel energized and stimulated. You can even drink the shots in one go and enjoy the instant and powerful impact"[105]

112. Defendants make the foregoing representations, among others, while failing to inform consumers that the corporate network of Entity Defendants' labeling, packaging, advertising, promoting, and marketing of Kratom Products are false and misleading in violation of Maryland law and the Ordinance.

113. Defendants' representations in "O.P.M.S.® Kratom Authenticity Guide,"[106] that:

> "O.P.M.S. does NOT sell bulk or loose products, only packaged goods. If a vendor is offering loose gold O.P.M.S. capsules, even if the capsules have the 3-leaf logo, these are fake and likely to contain research chemicals. O.P.M.S. has found several stores that offer loose O.P.M.S. gold capsules, but once again, these have been found to be fake and contain research chemicals."
>
> "At any given time, several companies illegally counterfeit O.P.M.S. products. Most of these companies add dangerous ingredients, such as research chemicals. *O.P.M.S. is constantly working to combat these counterfeiters* through its legal and enforcement department to ensure only safe and authentic products reach consumers."
>
> "Due to the serious health threat that these products pose, O.P.M.S. will treat stores that carry fake O.P.M.S. products no differently than the criminals who produce these potentially dangerous products. The O.P.M.S. legal team will go after these stores and disrupt their business aggressively with all available options."
>
> "O.P.M.S. takes reports of any company selling fake O.P.M.S. products very seriously. Please inform us if you have any information about suspicious products to help keep kratom users safe."
>
> "O.P.M.S. products have several key identifiers and unique markings to ensure customers can distinguish between an authentic product and a fake product."
>
> "O.P.M.S. identifiers to distinguish authentic products from counterfeits:"
>
> "Inside the product packaging: all O.P.M.S. packages have very specific areas where several key designs prove authenticity."

---

[105] *OPMS Kratom Shots-What Are They And Where To Find Them?*, Pure Leaf Kratom, https://pureleafkratom.com/a/blog/opms-kratom-shots.

[106] O.P.M.S. Kratom Authenticity Guide, *supra* n.71.

> "On the product capsules: every capsule or carrier will always have the authentic O.P.M.S. logo printed on it."

falsely imply that their Kratom Products are safe or, combined with their failure to inform consumers (or the City and other regulatory bodies, such as the FDA), that kratom is a highly addictive substance, is highly deceptive.

114. Similarly, the web of Entity Defendants' collective promotion of O.P.M.S. as:

> having "replaced old packaging [of its O.P.M.S. Gold products], so vendors who sell O.P.M.S. Gold products in a bag are selling a fake product likely to contain research chemical;"[107]
>
> "constantly working to combat these counterfeiters via O.P.M.S.'s legal and enforcement department to ensure only safe and authentic products reach consumers;"[108]
>
> using "[t]he newest safety feature in anti-counterfeiting technology for O.P.M.S. Gold packs" and encouraging consumers to "[p]lace a black light on the front of the blister card, and you can see the Gold shine;"[109]
>
> "[a]fter reaching a determination to what EACH alkaloid needed 'conditionally' to be extracted, [] superimpos[ing] the data sets, and from this, extrapolat[ing] the current parameters for its patented process. During this developmental phase, O.P.M.S. took great care to ensure that no chemical additives were used in the processing to deliver a TRULY all-natural Kratom Extract;"[110]
>
> "[d]uring the extraction and processing steps, [] [using] NO chemical additives or 'enhancers;"[111]
>
> "prid[ing] itself on never using any chemical additives, whereas many of today's more common Kratom Extracts contain adulterants;"[112] and

---

[107] Kratom Gold Authenticity, *supra* n.71.

[108] *Id.*

[109] *Id.*

[110] *About O.P.M.S. Kratom*, O.P.M.S. Kratom, https://opmskratom.com/about.

[111] *Id.*

[112] *Id.*

> "stand[ing] behind its line of products, knowing they are providing the highest quality"[113]

without informing consumers that the labeling, packaging, advertising, promoting, and marketing of Kratom Products by the corporate network of Entity Defendants is false and misleading in violation of Maryland law, and is highly deceptive. Their concealment of that fact is plainly actionable under the Ordinance.

115. Similarly, the corporate network of Entity Defendants engages in unfair, abusive, or deceptive trade practices by attempting to deceive consumers into believing Kratom Products are safe by comparing them to other kratom products by stating:

> Any O.P.M.S. Gold products in Bags are Fake/Counterfeit.[114]
>
> These fake/counterfeit O.P.M.S. Gold products are not Kratom extract, but instead, kratom sprayed with synthetic cannabinoids or synthetic opioids.[115]
>
> *Authentic O.P.M.S. Gold Capsules have the violet 3-leaf logo printed on every* capsule and are highly visible.[116]
>
> Some of the fake/counterfeit O.P.M.S. Gold capsules also have the 3-leaf logo printed on them. However, the print is not as crisp and clear, and the color is different from the original.[117]
>
> Authentic O.P.M.S. Gold Blister Cards now have the individual serial number printed on the back of every card on the bottom in a black box.[118]
>
> The newest safety feature in anti-counterfeiting technology for O.P.M.S. Gold packs: Place a black light on the front of the blister card, and you can see the Gold shine.[119]

---

[113] *Id.*

[114] Kratom Gold Authenticity, *supra* n.69.

[115] *Id.*

[116] *Id.*

[117] *Id.*

[118] *Id.*

[119] *Id.*

116. Defendants make similar statements comparing the other Kratom Products to "illegally counterfeit O.P.M.S. products," which the Entity Defendants claim include "dangerous ingredients, such as research chemicals," and tout their diligence in "combat[ting] these counterfeiters via O.P.M.S.'s legal and enforcement department to ensure only safe and authentic products reach consumers."[120]

In addition, Defendants assure consumers that they "want[] everyone to be safe" by using authentic O.P.M.S. products, falsely imply that its Kratom Products are safe or, combined with their failure to inform consumers (or the City and other regulatory bodies, such as the FDA), that kratom is a highly addictive substance, which is also highly deceptive.

**E. Defendants' Supply Chain**

117. As demonstrated herein, Defendants' shell companies and facilities spread out across the United States for each stage of importing, designing, manufacturing, testing, processing, labeling, packaging, shipping, marketing, distributing, and selling Kratom Products to hide the scope of their operation and to avoid liability for their actions in directing the corporate network of Entity Defendants.

118. As detailed in the *Tampa Bay Times* investigative reporting, Defendants engage an illicit network of suppliers, distributors, and importers in efforts to protect themselves from liability.[121]

---

[120] *See, e.g.*, Kratom Gold Authenticity, *supra* n.69; Kratom Black Authenticity, *supra* n.69; Kratom Gold Liquid Authenticity, *supra* n.69; Kratom Black Authenticity, *supra* n.69; Kratom Silver Capsules Authenticity, *supra* n.69; Kratom Silver Powders Authenticity, *supra* n.69.

[121] Helen Freund, *Part 3: Kratom's path across the US is marked by deception and secrets*, Tampa Bay Times (Dec. 17, 2023), https://project.tampabay.com/investigations/deadly-dose/kratom-industry-opms-supply-chain-indonesia-florida/.

119. Through its in-depth investigative reporting, the *Tampa Bay Times* has determined the approximate supply chain route for Kratom Products.[122] The approximate supply chain route for Kratom demonstrates just how far the web created by Defendants extends.

120. The kratom used in O.P.M.S.-branded capsules and powder travels approximately 14,355 miles from Indonesia where the raw kratom is harvested to one of A1 Wholesale's facilities in Dallas, Texas where O.P.M.S.-branded kratom products are packaged and labeled with the distinctive O.P.M.S.-branded packaging and labeling, making stops along the way to be sterilized, blended, milled, and encapsulated.[123] Then, these products travel another 1.7 miles to a second A1 Wholesale location in Dallas, Texas, where orders placed through Party Nuts' online wholesaler platform are fulfilled.[124] By this time, the kratom used in O.P.M.S.-branded capsules and powder has traveled more than 14,357 miles since it was harvested.[125]

121. The kratom used in O.P.M.S.-branded extracts travel approximately 14,372 miles from Indonesia where the raw kratom is harvested to a facility in Marietta, Georgia, where some extract powder is placed into capsules and stamped with O.P.M.S.' distinctive three-leaf logos and other kratom extract powder is liquefied, with stops along the way for sterilizing and processing. After Kratom Products are prepared for shipping at the Marietta, Georgia facility, they travel another 5.4 miles back to the Marietta receiving warehouse before being shipped another 794 miles to A1 Wholesale's Dallas, Texas where the O.P.M.S.-branded extracts are labeled and bottled.[126]

---

[122] Critchfield, *supra* n.19; Critchfield, Hannah et al, The Kratom Trail, Tracing a meandering supply chain (Dec. 17, 2023), https://files.tampabay.com/resources/kratom/kratom-map.pdf ("Kratom Supply Chain").

[123] Critchfield, *supra* n.19; Kratom Supply Chain, *supra* n.122.

[124] Kratom Supply Chain, *supra* n.122.

[125] *Id.*

[126] *Id.*

Then, O.P.M.S.-branded extracts are sent 1.7 miles to the second A-1 Wholesale facility and used to fulfill orders placed through Party Nuts' online wholesaler platform.[127] By this time, kratom used in O.P.M.S.-branded extracts has traveled more than 15,173 miles since it was harvested.[128]

122. Then, O.P.M.S. Kratom Products travel another approximately 1,366 miles to the City where they are sold at smoke shops and gas stations throughout the City.

123. Together, Defendants are involved in every step of the supply chain connecting the corporate network of Entity Defendants from import to distribution to advertising and marketing. The web of Entity Defendants thus acts as a single operation and purposefully direct their activities to each state in the United States, including to the State of Maryland and the City of Baltimore.

## V. DEFENDANTS KNEW OR SHOULD HAVE KNOWN THAT THEY WERE SELLING A HIGHLY ADDICTIVE AND DANGEROUS DRUG TO UNSUSPECTING CONSUMERS

124. Each Defendant either knew, or at a minimum, should have known, that its representations that Kratom Products were safe and enhanced the well-being of its consumers were false and misleading beginning no later than January 2004.

125. Since at least January 2004, Kratom-associated adverse drug reactions have been reported to FDA.[129]

---

[127] *Id.*

[128] *Id.*

[129] See Li X *et al.*, *An evaluation of adverse drug reactions and outcomes attributed to kratom in the US Food and Drug Administration Adverse Event Reporting System from January 2004 through September 2021*, 16 Clin. Transl. Sci. 6:1002-1011 (June 2023), https://pmc.ncbi.nlm.nih.gov/articles/PMC10264943/pdf/CTS-16-1002.pdf; *see also FDA Adverse Event Reporting System (FAERS) FOIA Case Report Information*, FDA Adverse Event Reports for Kratom Involving Death, https://www.fda.gov/files/drugs/published/Adverse-event-reports-for-Kratom-involoving-death.pdf; Oliver Ou, *et al.*, Kratom Related Adverse Event Reports from the FDA CFSAN Adverse Event Reporting System (CAERS), (2021), https://www.fda.gov/media/169066/download.

126. Since 2012, FDA has placed kratom on multiple "import alerts" for unapproved drugs, resulting in the seizure of thousands of pounds of kratom products.[130]

127. Several years prior to 2016, the U.S. Drug Enforcement Administration ("DEA") added kratom to its list of drugs and chemicals of concern.[131]

128. On August 30, 2016, the DEA announced its intention to place the active materials in the kratom plant into Schedule I of the Controlled Substances Act "in order to avoid an imminent hazard to public safety."[132]

129. In November 2017, FDA issued a public health advisory for kratom, citing its opioid-like risks and linking the substance with dozens of known deaths across the country.[133]

130. On July 26, 2024, FDA warned consumers not to consume O.P.M.S. Black Liquid Kratom, which "has been linked to serious adverse health effects, including death[,]" following FDA's receipt of an adverse event report of a person who died after using OMPS Black Liquid Kratom.[134]

131. On June 25, 2025, FDA issued a Warning Letter to Royal Diamond Imports, Inc. ("Royal Diamond"), warning Royal Diamond to cease and desist from making statements as to

---

[130] *US Marshals seize dietary supplements containing kratom*, U.S. Food and Drug Administration News Release (January 6, 2016), https://www.fda.gov/news-events/press-announcements/us-marshals-seize-dietary-supplements-containing-kratom.

[131] *See* DEA Press Release, *supra* n.46; *see also* Department of Justice/Drug Enforcement Administration Drug Fact Sheet (Apr. 2020), https://www.dea.gov/sites/default/files/2020-06/Kratom-2020_0.pdf.

[132] *See* DEA Press Release, *supra* n.46.

[133] Legislative Analysis *supra* n.43.

[134] *FDA Warns Consumers Not to Use Optimized Plant Mediated Solutions (OPMS) Black Liquid Kratom*, U.S. Food and Drug Administration (July 26, 2024), https://www.fda.gov/food/alerts-advisories-safety-information/fda-warns-consumers-not-use-optimized-plant-mediated-solutions-opms-black-liquid-kratom.

substantively identical representations on its own web site as to the therapeutic benefits of its its 7-OH tablets,[135] such as:

• "Each 60mg tablet delivers potent, full-bodied relaxation"

On your website homepage https://roxytabs.com:

• Your webpage has a graphic of your ROXY+ 7-OH 20mg tablets floating in the clouds with the statement "Get ready to elevate your experience with ROXY+ . . . delivering potent, and full-bodied relaxation."

• "Find Your Calm with Roxy . . . Roxy Kratom Tablets can help soothe your nerves and bring a peaceful calm, much like the tranquility of a quiet afternoon in nature. Perfect for unwinding after a long day, these tablets promote relaxation and stress relief."

• "Experience Enhanced Mood Naturally . . . Consuming Roxy Kratom Tablets in appropriate amounts can uplift your mood, making you feel happier and more appreciative of life's simple joys, much like enjoying a peaceful moment with a warm cup of coffee."

On your "FAQs" webpage https://roxytabs.com/pages/faq:

• "Q: How does 7-Hydroxymitragynine work?

A: 7-Hydroxymitragynine mainly functions as a partial agonist of brain receptors, which results in its distinct effects."

• "Q: What are the potential benefits of 7-Hydroxymitragynine?

A: Some users of kratom products with 7-Hydroxymitragynine report experiencing relief or an energy boost, but further research is necessary to fully comprehend its effects."

On your "About Us" webpage https://roxytabs.com/pages/roxy:

---

[135] *FDA Warning Letter to Royal Diamond Imports, Inc.*, U.S. Food and Drug Administration (June 25, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/royal-diamond-imports-inc-709540-06252025 at n.3 (citing https://roxytabs.com/products/roxy-xl-60mg-7-hydroxymitragynine-5-tablets-blister-pack and https://roxytabs.com/products/roxy-xl-60mg-7-hydroxymitragynine-10-blister-pack-display); *see also FDA Warning Letter to Hydroxie, LLC*, U.S. Food and Drug Administration (June 25, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/hydroxie-llc-709661-06252025 (discussing similar statements made by Hydroxie concerning its kratom products).

• "Why Choose Roxy Tabs? . . . Consistency and Purity: Roxy Kratom are produced with the highest standards of quality control, ensuring each tablet delivers a precise dose of 16mg of 7-Hydroxymitragynine. This consistency is key to achieving desired effects such as enhanced mood, increased energy, and pain relief without the variability found in loose leaf or powdered products."

• "Powerful Effects: With around 2% active 7-hydroxymitragynine alkaloid, Roxy Kratom Tablets are among the most potent kratom products available on the market. Users can expect powerful effects that enhance mood, improve sociability, and provide significant relaxation and pain relief, depending on the dosage."

• "Potential Benefits . . . Enhanced Mood . . . Increased Focus and Energy . . . Pain Management . . . Stress and Anxiety Relief . . . Improved Sleep"

• "Roxy Kratom Tablets represent a significant advancement in herbal supplementation, providing a powerful, consistent, and convenient option for enhancing well-being. By adhering to recommended dosages and guidelines, users can safely enjoy the myriad benefits that kratom has to offer. Whether seeking relief from pain, a boost in energy, or a natural way to manage anxiety, Roxy Tabs provide a trustworthy solution to improve quality of life."

On your "Product Details" webpage https://roxytabs.com/pages/product-details:

• "Roxy Kratom Tablets are expertly formulated to provide a potent dose of kratom's active alkaloids, specifically 7-hydroxymitragynine, which is known for its ability to enhance mood, alleviate pain, and increase energy levels. Each tablet is designed to deliver a consistent and effective experience to support daily well-being."

Additionally, your website contains evidence of intended use in the form of personal testimonials recommending or describing the use of your products for the treatment of disease and/or to affect the structure or function of the body. Examples of such testimonials include, but are not limited to, the following:

• "I have a very painful chronic disease. Unfortunately my pain management doctor seems to have capped my dosage of my standard pain medication at an insufficient level. If I didn't have kratom I don't know what I'd do. Roxy is the best product I've tried." [From the Customer Reviews section of the ROXY+ 7-OH 20mg tablets product webpage https://roxytabs.com/products/roxy-20mg-7-hydroxymitragynine-30-flavored-tablets-jar]

• "I'm sharing this because I've discovered an incredible effect that has truly transformed my experience. I chew a half tablet, and within about 15 minutes, the pain fades away, replaced by pure relaxation without any grogginess. This is truly exceptional." [From the Customer Reviews section of the ROXY 7-OH 16mg tablets product webpage https://roxytabs.com/products/roxy-16mg-7-hydroxymitragynine-2-count-blister-pack-tablets]

132. Defendants' knowledge that kratom is a highly addictive and dangerous substance is further demonstrated by the 20 pages of "Terms and Conditions of Product Use" currently listed on its website.[136] These "Terms and Conditions" include, among other things, extensive language concerning the requirement to resolve any claims consumers have against them— "INCLUDING BUT NOT LIMITED TO DISPUTES IN WHICH YOU OR A SURVIVOR ON BEHALF OF YOU OR YOUR ESTATE IS ALLEGING THAT YOU ANYONE ELSE SUFFERED INJURY OR DEATH BECAUSE OF OUR PRODUCT"—through binding arbitration and a class action waiver.[137]

## VI. DEFENDANTS SELL, AND CONTINUE TO SELL, HIGHLY ADDICTIVE AND DANGEROUS KRATOM PRODUCTS IN BALTIMORE

133. Defendants sell, and continue to sell, their Kratom Products in the City.

134. **According to O.P.M.S.'s store locator (https://opmskratom.com/store-locator),** multiple retailers in Baltimore City sell Kratom Products, including, but not limited to:

> Karmic Connection, 508 S. Broadway, Baltimore, MD 21231; 529 Vapes, 529 S. Broadway, Baltimore, MD 21231;
>
> Firefly, 3714-16 Eastern Ave., Baltimore, MD 21224; Docs Smoke Shop & CBD's, 3721 Eastern Avenue, Baltimore, MD 21224;
>
> Kratom Vapor CBD Shop 1, 1000 Dundalk Ave., Baltimore, MD 21224.

135. In addition, Kratom Products have also been sold in the City at Tobacco House & Gifts, 1005 S. Charles St., Baltimore, MD, among other locations.[138]

---

[136] *Terms and Conditions of Product Use*, O.P.M.S. Kratom, https://opmskratom.com/terms-conditions.

[137] *Id.* (emphasis in original).

[138] *See* Tobacco House's January 22, 2019 Facebook post showing packages of O.P.M.S. Silver Thai, O.P.M.S. Silver Maeng Da, at https://www.facebook.com/TobaccoHouseBaltimore/.

## VII. DEFENDANTS' DUTIES UNDER THE CPO AND BREACH THEREOF

136. Each Defendant had at least the following legal duties under the CPO:

a. A duty to refrain from engaging in unfair, abusive, or deceptive trade practices in the sale or offer for sale of any consumer goods;

b. A duty to refrain from knowingly making any false or misleading oral or written statements, visual description, or other representation of any kind in connection with the sale of goods in the regular course of its trade or commerce, that may, tends to, or does deceive or mislead any person;

c. A duty to refrain from representing that goods, i.e. Kratom Products, have characteristics, ingredients, uses, or benefits that they do not have;

d. A duty to refrain from representing that goods, i.e. Kratom Products, are of a particular standard, quality or grade which they are not;

e. A duty to disclose the material fact that the use of Kratom Products as intended is not safe or does not provide the therapeutic benefits that Defendants represented they did; and

f. A duty to disclose the material fact that the active ingredients in their Kratom Products are similar to opioids and highly addictive substances, and falsely implying in their labeling, packaging, advertising, marketing, and selling of Kratom Products that Kratom Products are safe or have therapeutic benefits that they do not have.

137. Each Defendant breached their legal duties under the CPO, by at least the following over acts:

a. Engaging in unfair, abusive, or deceptive trade practices in the sale or offer for sale of Kratom Products, as described herein;

b. Knowingly making false or misleading oral or written statements, visual description, or other representation of any kind in connection with the labeling, packaging, shipping, marketing, distributing, and selling of Kratom Products in the regular course of its trade or commerce, that may, tends to, or does deceive or mislead any person, as described herein, in violation of MCPA § 13-301(1), and thus, in violation of the Ordinance;

c. Misrepresenting that Kratom Products, have characteristics, ingredients, uses, or benefits that they do not have, as alleged herein, in violation of MCPA § 13-301(2)(i), and thus, in violation of the Ordinance;

d. Misrepresenting that Kratom Products are of a particular standard, quality or grade which they are not, as alleged herein, in violation of MCPA § 13-301(2)(iv) and thus, in violation of the Ordinance;

e. Failing to disclose the material fact that use of Kratom Products as intended is not safe or does not provide the therapeutic benefits that Defendants represent, in violation of MCPA § 13-301(3) and thus, in violation of the Ordinance;

f. Failing to disclose that the active ingredients in their Kratom Products are similar to opioids and highly addictive substances and falsely implying in their labeling, packaging, advertising, marketing, and selling of Kratom Products that Kratom Products are safe or have therapeutic benefits that they do not have, in violation of MCPA § 13-301(9) and thus, in violation of the Ordinance.

## FIRST CAUSE OF ACTION: UNFAIR, ABUSIVE, AND DECEPTIVE TRADE PRACTICES

**VIOLATIONS OF BALTIMORE CITY CODE, ART. 2 § 4**
**(AGAINST ALL DEFENDANTS)**

138. The City re-alleges and incorporates by reference the allegations contained in paragraphs 1-137 of this Complaint as if fully set forth herein.

*139. The CPO, Baltimore City Code Art. 2, § 4* protects consumers and others against "unfair, abusive, or deceptive trade practices," in the "sale"[139] or the offer for "sale" of any "consumer goods," as these terms are defined in the Maryland Consumer Protection Act, Md. Code, Com. Law §§ 13-101 *et seq.* (the "MCPA").[140]

140. Section 13-301 of the MCPA provides a non-exclusive list of unfair, abusive, or deceptive trade practices, including:

a. any "[f]alse ... or misleading oral or written statement ... or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," MCPA § 13-301(1);

b. "representations that: (i) Consumer goods ... have a ... characteristic, ingredient, use, benefit ... which they do not have; or (iv) Consumer goods ... are of a particular standard, quality, [or] grade which they are not," *Id.* § 13-301(2)(i), (iv);

c. "[f]ailure to state a material fact if the failure deceives or tends to deceive" to be unfair, abusive, or deceptive trade practices, *Id.* § 13-301(3); and

[139] The MCPA defines "sale" to include any "sale of or offer or attempt to sell merchandise, real property or intangibles for cash or credit." MCPA §§ 13-101(d)(1), (i)(1). Baltimore City Code Art. 2, § 4-1(9).

[140] CPO § 4-1; *Mayor & City Council of Baltimore v. MoneyLion Techs. Inc.*, No. CV SAG-25-03692, 2026 WL 1532962, at *3 (D. Md. June 1, 2026) (explaining "in assessing whether [the defendant's] practices were 'deceptive' or 'unfair,' [the] Court would be applying definitions long settled under [the MCPA] and case law interpreting it").

d. "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: (i) [t]he promotion or sale of any consumer goods," *Id.* § 13-301(9)(i).

141. "Any practice prohibited by [the MCPA] is a violation of [the MCPA], whether or not any consumer in fact has been misled, deceived, or damaged as a result of that practice." *Id.* § 13-302.

142. While specific practices are enumerated in the MCPA, and thus extended to the CPO, "[i]t is the intent of the [Maryland] General Assembly that in construing the term 'unfair or deceptive trade practices,' due consideration and weight be given to the interpretations of [15 U.S.C. § 45] by the Federal Trade Commission [("FTC")] and the federal courts." MCPA § 13-105. As the FTC has explained, unfairness under 15 U.S.C. § 45 is determined, in part, by a consideration of "whether the practice injures consumers" and "whether it violates public policy."[141]

143. It is a violation of the CPO for a retailer to "directly or indirectly advertise a therapeutic benefit of kratom." Md. Code Ann., Health-Gen. § 21-2E-03(a).

144. By designing, manufacturing, processing, labeling, packaging, shipping, marketing, advertising, distributing, and selling highly addictive, dangerous Kratom Products within Baltimore, while (1) failing to disclose the active ingredients in their Kratom Products are similar to opioids and highly addictive substances, and (2) falsely stating and implying in their labeling, packaging, advertising, marketing, and selling of Kratom Products that Kratom Products

[141] *FTC Policy Statement on Unfairness*, U.S. Federal Trade Commission (Dec. 17, 1980), https://www.ftc.gov/legal-library/browse/ftc-policy-statement-unfairness.

are safe or have therapeutic benefits that they do not have, each Defendant willfully engaged in unfair, abusive, and deceptive trade practices. As such, each Defendant has violated—and continue to violate—the Baltimore CPO.

145. Defendants' acts and omissions in violation of the Baltimore CPO include, *inter alia*:

a. Misrepresenting that Kratom Products have characteristics, ingredients, uses, or benefits that they do not have while failing to disclose that the active ingredients in their Kratom Products are similar to opioids and highly addictive substances and falsely implying in their labeling, packaging, advertising, marketing, and selling of Kratom Products that Kratom Products are safe or have therapeutic benefits that they do not have, as alleged herein, in violation of MCPA § 13-301(2)(i);

b. Misrepresenting that Kratom Products are of a particular standard, quality or grade which they are not, as alleged herein, in violation of MCPA § 13-301(2)(iv) and thus in violation of the Ordinance;

c. Failing to disclose the material fact that use of Kratom Products as intended is not safe or does not provide the therapeutic benefits that Defendants represent, in violation of MCPA § 13-301(3) and thus in violation of the Ordinance;

d. Misrepresenting or knowingly concealing, suppressing or omitting the material fact that the active ingredients in their Kratom Products are similar to opioids and highly addictive substances, and falsely implying in their labeling, packaging, advertising, marketing, and selling of Kratom Products that Kratom Products are safe or have therapeutic benefits that they do not have, in violation of MCPA § 13-301(9) and thus in violation of the Ordinance; and

e. Directly or indirectly advertising a therapeutic benefit of Kratom Products in violation of the Ordinance.

146. Defendants' unfair, abusive, and deceptive trade practices caused—and continue to cause—substantial injury to City consumers.

147. Each misleading inducement, including labeling, advertising, or marketing of Kratom Products, used by or on behalf of the corporate network of Entity Defendants to generate a sale of a Kratom Product in the City is a separate violation of the CPO giving rise to civil penalties pursuant to Baltimore City Code, Art. 2, § 4-3(B).

148. Each sale of a Kratom Product in the City (a) without disclosing that Kratom Products are highly addictive and (b) while falsely stating or implying in the labeling, advertising, marketing of Kratom Products that Kratom Products are safe or have therapeutic benefits that they do not have, is a separate violation of the CPO giving rise to civil penalties pursuant to Baltimore City Code, Art. 2, § 4-3(B).

149. Defendants' actions demonstrate a callous disregard for the public health, safety, and well-being of the City's residents. At all times, Defendants have willfully engaged in these unfair, abusive, and deceptive trade practices.

150. Defendants' unfair or deceptive trade practices were knowingly and willfully made because Defendants were actually aware that their representations that Kratom Products were safe and therapeutically enhanced the well-being of its consumers were false and misleading beginning no later than January 2004 and/or in the exercise of reasonable diligence, Defendants should have been aware that their statements were unfair and/or deceptive. *See supra*, Section V.

151. Moreover, each Defendant knew, or should have known, that their actions were of a nature prohibited by the CPO.

152. Defendants' unfair or deceptive representations in the labeling, advertising, marketing, and product packaging for Kratom Products are the type that tended to deceive and/or mislead Baltimore and the residents of Baltimore. Consumers were intended to rely upon, e.g. Defendants' labeling, packaging, advertising, and marketing statements concerning Kratom Products.

153. Defendants' unfair trade practices were, and continue to be, substantial in that they have caused unwarranted health and safety risks to the residents of Baltimore. Defendants' unfair trade practices are not outweighed by any countervailing benefits to the residents of Baltimore.

154. As a result of the forgoing, the City seeks all legal and equitable relief allowed by law, including civil penalties and injunctive relief.

## VIII. JURY DEMAND

155. Baltimore respectfully requests trial by jury on all claims so triable.

## IX. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Mayor and City Council of Baltimore, respectfully requests that judgment be entered in its favor and against Defendants, as follows:

a. Awarding the maximum amount of statutory penalties available under Baltimore City Code, Art. 2, § 4-3 for each violation of Baltimore's CPO, Baltimore City Code Art. 2, § 4;

b. Granting injunctive relief pursuant to CPO § 4-5(d), mandating that Defendants disclose that the active ingredients in their Kratom Products are similar to opioids and highly addictive substances;

c. Granting injunctive relief pursuant to CPO § 4-5(d), mandating that Defendants cease falsely stating or implying in their labeling, packaging, advertising,

marketing, and selling of Kratom Products that Kratom Products are safe or have therapeutic benefits that they do not have;

d. Granting injunctive relief pursuant to CPO § 4-5(d), requiring Defendants to issue corrective disclosures requiring Defendants to run advertising campaigns clarifying the misimpression created by their labeling, packaging, advertising, marketing, and promoting of Kratom Products;

e. Granting injunctive relief pursuant to CPO § 4-5(d), requiring Defendants to issue corrective disclosures requiring Defendants to disclose on the labeling and packaging and in the advertising and marketing of their Kratom Products the addictive nature of these products; and

f. Awarding such other relief as may be available and appropriate under the law or in equity.

Date: July 27, 2026

Respectfully submitted,
MAYOR AND CITY COUNCIL OF BALTIMORE

Ebony M. Thompson
Baltimore City Solicitor

By: ______________________
Sara Gross (No. 0412140305)
Chief Solicitor, Litigation
Thomas Webb (No. 1306190321)
BALTIMORE CITY DEPARTMENT OF LAW
100 N. Holliday Street, Suite 109
Baltimore, MD 21202
Tel.: (410) 396-3947
Fax: (410) 574-1025
Ebony.Thompson@baltimorecity.gov
Sara.Gross@baltimorecity.gov
Tom.Webb@baltimorecity.gov

Richard S. Gordon
Martin Wolf
Benjamin H. Carney
GORDON WOLF & CARNEY, CHTD.
11350 McCormick Road
Executive Plaza 1, Suite 1000
Hunt Valley, MD 21031
Tel. (410) 825-2300
Fax.: (410) 825-0066
rgordon@gwcfirm.com
mwolf@gwcfirm.com
bcarney@gwcfirm.com

Kyle J. McGee (to be admitted pro hac vice)
Kelly L. Tucker (to be admitted pro hac vice)
Laina M. Herbert (to be admitted pro hac vice)
Ana R. Martin (to be admitted pro hac vice)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
kmcgee@gelaw.com
ktucker@gelaw.com
lherbert@gelaw.com
amartin@gelaw.com

*Attorneys for Plaintiff Mayor & City Council of Baltimore*